MAGEE, et al. *v.* HOLMES.

Feb. 8, 1954

No. 39067 52 Adv. S. 12 70 So. 2d 60

*Hall & Callender,* Columbia; *J. M. Alford,* Tylertown, for appellants.

*Breed O. Mounger,* Tylertown; *Cassidy, McLain, Alford & Pigott,* McComb, for appellee.

KYLE, J.

Toxie B. Magee and others, complainants, filed their bill in the Chancery Court of Walthall County against H. B. Holmes, the defendant, to quiet their title to a 72-acre tract of land owned by N. C. Fortenberry, deceased, at the time of his death, and for a discovery and accounting for rents and the proceeds of the sale of timber.

In their bill the complainants alleged that they were the owners of the land in fee simple, as tenants in common, having derived title thereto under a joint will executed by N. C. Fortenberry and his wife, Mrs. A. E. Fortenberry, on November 28, 1928. The complainants alleged that N. C. Fortenberry died August 31, 1936, and that Mrs. N. C. Fortenberry died on April 30, 1949; that under the terms of the joint will the land was devised and bequeathed to Mrs. A. E. Fortenberry for the term of her natural life, and at her death said land was to go to the complainants, who were the grandchildren of the said testator; that the defendant, H. B. Holmes, was in possession of the land, claiming it as his own, under a pretended deed executed by Mrs. A. E. Fortenberry on December 31, 1937, in which she had attempted to convey the land to him. The complainants asked that the above mentioned deed executed by Mrs. A. E. Fortenberry to the defendant, and a deed executed by the defendant about ten days later to his daughter, Mrs. Golda H. Chappell, and a quitclaim deed executed by Mrs. Golda H. Chappell to the defendant on February 14, 1947, be cancelled as clouds upon the complainants' title, and that their title to the land be confirmed, and that the defendant be required to account for the rents and profits received by him during the time that he had been in possession of the land, and also the proceeds of the sale of timber.

The defendant in his answer denied that N. C. Fortenberry was the owner of the land, or at least a part thereof, at the time of his death. He admitted that N. C. Fortenberry and his wife had executed the above mentioned joint will, but he denied that Mrs. Fortenberry took only a life estate in the land under the terms of the will; and he denied that the deed of conveyance executed by Mrs. Fortenberry to him on December 31, 1937, conveyed to him only a life estate in the 72 acres of land. He admitted that he had sold timber of the value of $238 while he was in possession of the land, and that he had col-

lected rents from the year 1939 to the year 1949 in the sum of $926.55, but averred that he had sustained losses during two of those years in the sum of $182.48. The defendant also averred that he had made permanent improvements and repairs on the dwelling house, and that he had drilled a well on the land, and that if the court should hold that he was not the rightful owner of the land he should be compensated for the improvements and repairs made by him during the time of his occupancy.

The case was tried before the chancellor on May 29, 1952, and a decision was rendered on November 18, 1952. The chancellor found that Mrs. A. E. Fortenberry was vested with title to only a life estate in the 72 acres of land under the terms of the will of her husband, N. C. Fortenberry, deceased, and that the deed executed by Mrs. Fortenberry to H. B. Holmes on January 31, 1937, conveyed only her life estate in said land, which was terminated at her death on April 30, 1949; and that the complainants were the owners of a fee simple title to the land. The chancellor found that the defendant had made certain improvements on the land, however, in the belief that he had a good title to the same, and that he should be reimbursed therefor. In its decree the court adjudged that the complainants were the owners of the land in fee simple, as tenants in common, and the court ordered that the defendant's claim of title to the land be cancelled. The court in its decree, however, affixed a lien upon the land in favor of the defendant for the sum of $350, which the court found that the defendant was entitled to recover for improvements made by him upon the land and for taxes paid by him, less the rents collected by him while he was in possession of the property; and the defendant was ordered to vacate the premises on or before December 1, 1952, provided the complainants discharged the lien for the above mentioned sum of $350 on or before that date.

From that decree the complainants have prosecuted this appeal, and the defendant has also filed a cross assignment of errors.

The appellee in his cross assignment of errors has challenged the decision of the chancellor holding that Mrs. A. E. Fortenberry was vested with only a life estate in the above mentioned 72 acres of land under the terms of the will; and it is therefore necessary that we dispose of that question before we consider the appellants' assignment of errors.

The first three items of the joint will executed by N. C. Fortenberry and his wife, Mrs. A. E. Fortenberry, on November 28, 1928, are as follows:

"ITEM I—It is our will that at the death of either of us, that the survivor take the real property belonging to the decedent for the term of his or her natural life, and all money or personal property owned by the decedent with authority to use, dispose of, or consume; yet, what may not be used, disposed of or consumed at the death of the survivor, to go as hereinafter designated.

"ITEM II—It is our will that at the death of the survivor, that the real property held by either or both of us, jointly or severally shall be held in trust by the Executor hereinafter named, for the use and benefit of the living children of our daughter, Myrtis Fortenberry Magee, and the title in fee simple to vest in them or their children immediately upon the death of their father, Dannie Magee, but the devisees under this will shall only be entitled to the rents and profits of said real property until after the death of the said Dannie Magee, when the executor shall surrender said real property to the said devisees; however, the devisees, together with the executor, may at any time after the executor has assumed control of said property agree to sell said real property, but in that event, the proceeds of such sale must be invested for the use and benefit of said devisees until they would have come into the possession of the real

property, if it had not been sold, under the terms of this will.

"ITEM III—It is our will and desire that whatever personal property the survivor of us may own or have on hand, which belonged to the decedent, in the lifetime of the decedent shall be held in trust by the said executor, for the use and benefit of the above devisees, awaiting the contingency heretofore expressed, in this will and the said executor may sell any or all articles of personal property bequeathed in this will, on the death of the survivor and invest the proceeds thereof along with any money which may be on hand at the death of the survivor for the use and benefit of the devisees in this will."

 There was no error in the chancellor's holding that Mrs. A. E. Fortenberry was the owner of only a life estate in the 72-acre tract of land. The evidence clearly showed that N. C. Fortenberry was the owner of the land at the time of his death in 1936; and the interest in the real property belonging to the decedent, which was devised and bequeathed to Mrs. Fortenberry in Item I of the will, was only a life estate. The words "with authority to use, dispose of, or consume; yet, what may not be used, disposed of or consumed at the death of the survivor, to go as hereinafter designated," related only to the "money or personal property owned by the decedent," and not to "the real property belonging to the decedent," which was devised to the survivor "for the term of his or her natural life." This interpretation of the meaning of Item I of the will finds support in the two next succeeding items of the will, which relate to the ultimate disposition of "the real property held by either or both of us jointly or severally," and "whatever personal property the survivor of us may own or have on hand, which belonged to the decedent, in the lifetime of the decedent."

In Item II of the joint will, it was expressly provided that "at the death of the survivor, . . . the real property held by either or both of us, jointly or sever-

ally, shall be held in trust by the executor hereinafter named, for the use and benefit of the living children of our daughter, Myrtis Fortenberry Magee, and the title in fee simple to vest in them or their children immediately upon the death of their father, Dannie Magee.'' From the language used in Item II it is clear that it was not the intention of the testators that the survivor should have the power of disposing of the real property during his or her lifetime.

We therefore hold that the estate taken by Mrs. A. E. Fortenberry under the will in the above mentioned 72-acre tract of land was an estate for the term of her natural life, and that the estate which she conveyed to the appellee by her deed dated December 31, 1937, was an estate limited to the term of her natural life. That estate terminated at her death on April 30, 1949. Dannie Magee, who is mentioned in Item II of the will, had died in 1943; and the appellants as remaindermen became entitled to the immediate possession of the land at the death of their grandmother on April 30, 1949.

The main point argued by the appellant's attorneys on their direct appeal is that the chancellor erred in holding that the appellee was entitled to be compensated for improvements made on the land and for taxes paid by him while he was in possession of the land under the deed executed to him by the life tenant, and in imposing a lien on the land to secure the payment of the amount found to be due on that account. It is first argued that the appellee filed no cross bill, and that the court had no authority to grant the affirmative relief asked for in his answer. But in view of the conclusion that we have reached on the merits of the appellee's claim for affirmative relief, it is not necessary for us to consider the effect of the appellee's failure to file a cross bill.

We think that the chancellor erred in holding that the appellee was entitled to recover from the remaindermen any part of the cost of the improvements made by the

appellee while he was in possession of the land under the deed executed by the life tenant.

The rule is well settled that a life tenant is not entitled to recover from remaindermen the cost of repairs and improvements made by the life tenant on the property or the amounts expended by the life tenant in the payment of ordinary taxes.

The rule relating to the recovery of compensation for improvements made by the life tenant and the reasons therefor is stated in 33 Am. Jur., p. 985, Life Estates, Remainders, etc., par. 457, as follows:

"The general rule is clearly established that compensation for improvements made by a life tenant with full knowledge of his title to the property cannot be recovered from the reversioner or remainderman, either by way of a money judgment or decree or by the assertion of a lien against the property. Various reasons have been announced for the rule, but the ones usually advanced are that the life tenant should not be permitted to consume the interest of the remainderman by making improvements that the remainderman cannot pay for or that he does not desire, and also that improvements are usually made for the immediate benefit of the life estate and without reference to the wishes of the remainderman."

The life tenant is bound to keep the premises in repair, but is under no legal obligation to undertake improvements. If he does so, it is a voluntary act of his own, which gives him no claim against the reversioner for the payment of any part of the cost of the improvement. Pass v. McLendon, 62 Miss. 580; Stewart, et al. v. Matheny, 66 Miss. 21, 5 So. 387; Deanes v. Whitfield, et al., 107 Miss. 273, 65 So. 246; see also Anno. 128 A. L. R. 269; and cases cited.

In the case that we have here the appellee was under no liability to account to the appellants for rents received by him during the continuance of the life estate; and he was not entitled to be reimbursed for improvements

made by him on the land during the continuance of the life estate.

 It is argued, however, that the chancellor was justified in allowing compensation for the improvements in this case, for the reason that the appellee made the improvements in the belief that he had good title to the land. But that contention is fully answered in the opinion rendered by this Court in the case of Stewart, et al. v. Matheny, 66 Miss. 21, 5 So. 387, wherein the Court said:

 "But the purchaser of land must be conclusively presumed to know what appears on the face of the title papers under which he claims, and this presumption cannot be rebutted or explained away. He must take notice of his title as being to a life estate or a fee, where that title is plainly disclosed by the record accessible to him, and not to examine which, ordinarily, would be gross negligence.

" 'The law will not permit him to deny notice by insisting that he had not read the deed.' Wailes v. Cooper, 24 Miss. 208; Wade on the Law of Notice, Sec. 308; LeNeve v. LeNeve, 2 Lead. Cases in Eq., p. 169.

"Upon the facts of this case the holders of the land during the life estate must be held to have known the nature and duration of their estate and to have improved it for themselves, taking the risk of its duration, and nothing is shown to entitle the life tenant to pay for improvements."

In the case of Deanes v. Whitfield, et al., 107 Miss. 273, 65 So. 246, the Court said:

"It seems to be the settled law in this state that compensation for improvements is applicable only where there can be a demand for mesne profits, and that improvements put upon land by the life tenant pass to the remainderman, and that, as the life tenant is not liable for rents, he is not entitled to compensation for improvements made during the existence of his estate. Pass v. McLendon, 62 Miss. 580."

■■■ The chancellor also erred in holding that the appellee was entitled to be reimbursed for the taxes paid by him while he was in possession of the land under the deed executed by the life tenant. The appellee during that time was the owner of the life estate, and it was his duty to pay the taxes. ■■ It is well settled by the decisions of this Court that a life tenant in possession of the land and enjoying the income therefrom must pay the ordinary taxes. Cox v. Richerson, et al., 186 Miss. 576, 191 So. 99; Federal Land Bank of New Orleans v. Newsom, et al., 175 Miss. 134, 166 So. 346; Medford, et al. v. Mathis, 176 Miss. 188, 168 So. 607.

■■■ The appellants were entitled to a decree for the immediate possession of the land after the death of Mrs. A. E. Fortenberry on April 30, 1949. They were not entitled to an accounting for the rents and profits received by the appellee prior to the death of Mrs. Fortenberry. But they were entitled to a decree for the reasonable rental value of the land for the period of time that the appellee remained in possession after the termination of the life estate, less the amount of the taxes paid by the appellee during that time. And the appellants were also entitled to an accounting for the proceeds of the sale of the timber, which the appellee in his answer admitted that he had sold while he was in possession of the land as the owner of the life estate.

■■■ Finally, we think that the chancellor erred in taxing the court costs against the appellants. The appellants obtained most of the relief sought in their bill of complaint, and the appellee should have been taxed with the court costs. Reinecke v. Gibbs, et al., 196 Miss. 247, 16 So. 2d 853; United Press Associations v. McComb Broadcasting Corporation, 201 Miss. 68, 28 So. 2d 575.

For the reasons stated above that part of the decree of the lower court adjudging that the appellants were the owners in fee simple as tenants in common of the 72-acre tract of land, and directing that the appellee's claim

of title be cancelled is affirmed; but that part of the decree affixing a lien upon the land in favor of the appellee for the sum of $350 to cover the cost of improvements made and taxes paid by the appellee while he was in possession of the land under the deed from the life tenant, and providing for the enforcement of said lien, is reversed; and the cause is remanded to the lower court for further proceedings in conformity with what has been said above.

Affirmed on cross appeal; affirmed in part and reversed in part on direct appeal and remanded.

*McGehee, C.J.,* and *Lee, Holmes* and *Ethridge, JJ.,* concur.