464 So.2d 499 (1985)
STANTON & ASSOCIATES, INC.
v.
BRYANT CONSTRUCTION COMPANY, INC.
No. 54599.
Supreme Court of Mississippi.
February 20, 1985.
*501 Luke J. Schissel, Caroline R. Moore, Greenwood, for appellant.
Robert C. Connor, Jr., Port Gibson, for appellee.
Before WALKER, P.J., and HAWKINS and ROBERTSON, JJ.
ROBERTSON, Justice, for the Court:

I.
This appeal follows a jury verdict in favor of a subcontractor in the amount of $16,405.30 as compensation for bulldozer services afforded the prime contractor on a road construction project in Jefferson County, Mississippi. Attorneys fees in the amount of $4,920.00 and prejudgment interest were also awarded to the subcontractor.
On appeal, the prime contractor contends that: (1) the trial court erred in awarding the subcontractor its reasonable attorneys fees incurred in prosecuting this action; (2) the trial court erred in awarding the subcontractor prejudgment interest; (3) the trial court erred in overruling the prime contractor's motion to dismiss pursuant to Rule 12(b)(6), Miss.R.Civ.P.; (4) the quantum meruit verdict of the jury was against the weight of the evidence; and (5) the trial court erred in assessing costs to the defendant prime contractor.
For the reasons set forth below, we affirm in part and reverse in part.

II.

A.
In September of 1981, Stanton & Associates, Inc., a corporation, Defendant below and Appellant here, received a contract with the State of Mississippi to perform Job Number 32(39)  aptly named (considering the trouble and expense this litigation has generated) the Poor House Road Project. Shortly thereafter, Stanton discussed with Bryant Construction Company, also a corporation, Plaintiff below and Appellee here, that portion of the project which involved "clearing and grubbing" approximately 24 acres. Bryant offered to do the clearing and grubbing for $1,200.00 an acre, but Stanton refused this offer. Following this specific negotiation, Stanton and Bryant agreed orally that Bryant, as subcontractor, would help Stanton, as prime contractor, with the job and would be paid by the hour  but the amount Bryant would be paid per hour was not set or even discussed.[1] Other equipment owned by Stanton aided Bryant in the clearing and grubbing work. The parties stipulated that Bryant's bulldozer performed 291 1/2 hours of work.
Most of the testimony in this case centered upon extrapolating the value of clearing and grubbing that 24 acres of land and what percentage of such value was contributed by the 291 1/2 hours worked by Bryant's bulldozer. Stanton contended that the job was at most worth $24,000 and that Bryant contributed approximately 30 percent of the work; therefore, Stanton would owe Bryant some $7,200.00. This evaluation took into account the age and state of repair of Bryant's bulldozer. In contradistinction, Bryant put on proof regarding the normal hourly rate paid when hiring bulldozers, including the rates paid on other jobs for the very bulldozer in question. Suffice it to say that all this proof combined to pose a question for the *502 jury regarding the value of Bryant's services.

B.
Procedurally, Bryant commenced this action on January 19, 1982, when it filed its complaint in the Circuit Court of Jefferson County. As originally filed, the complaint named Stanton, the prime contractor, and its bonding company, United States Fidelity & Guaranty Co., as defendants. The claim against USF & G was dismissed prior to trial. Bryant does not cross-appeal this dismissal of USF & G.
In due course thereafter, Stanton filed a motion to dismiss which in relevant part charged that the complaint failed to state a claim upon which relief could be granted. See Rule 12(b)(6), Miss.R.Civ.P. The motion was not granted. A first attempt at trying this case resulted in a mistrial due to an irregularity concerning the jury. Thereafter, the case was tried in the Circuit Court of Jefferson County on June 10th and 11th of 1982. After all the evidence had been put before the jury, the trial judge directed the jury through Instruction P-1 to return a verdict in favor of Bryant on liability. Indeed, Stanton has never disputed that it owed Bryant something  the question has been how much. The issue before the jury was thus limited to the amount for which Stanton was liable to Bryant.
The jury was also instructed through Instruction C-3 that their verdict should include a credit to Stanton in the amount of $5,457.20 for monies and diesel fuel already provided to Bryant by Stanton. After having been duly instructed, the jury returned a verdict for Bryant in the amount of $16,405.30. The trial judge also awarded attorneys fees to Bryant in the amount of $4,920.00 and also ordered Stanton to pay prejudgment interest and all costs. This appeal has followed.

III.

A. What Kind of Lawsuit is This?

One principal focus of Stanton's appeal is a challenge to the attorneys fees and prejudgment interest awarded Bryant. In order to sustain these awards, Bryant must be able to characterize its suit as either one on a payment bond or one on an open account in order to take advantage of the statutory provisions for attorneys fees and/or prejudgment interest, for it is often stated that in the absence of statute or contract providing expressly therefor, or proof sufficient to support an award of punitive damages, there can be no recovery of attorneys fees or pre-judgment interest. See, e.g., Litten v. Grenada County, 437 So.2d 387, 388 (Miss. 1983); Bellefonte Insurance Company v. Griffin, 358 So.2d 387, 391 (Miss. 1978).
Sensing this obstacle, Bryant seeks to characterize his suit as based on one of two statutes. The propriety of awarding attorneys fees in a suit on open account is controlled by Miss. Code Ann. § 11-53-81 (Supp. 1984). The propriety of prejudgment interest in suits on open accounts is based on caselaw such as J.R. Watkins Co. v. Runnels, 252 Miss. 87, 93, 172 So.2d 567, 571 (1965). The propriety of awarding attorneys fees in suits on a payment bond is governed by Miss. Code Ann. § 31-5-57 (Supp. 1984). The propriety of an award of prejudgment interest in a suit on a payment bond is governed by Miss. Code Ann. § 31-5-27 (Supp. 1984).
If Bryant's suit does not fit into either the open account or the payment bond molds  but turns out to be merely a suit in quantum meruit  attorneys fees and pre-judgment interest are not available. We have held that in a suit by a prime contractor against its subcontractor, attorneys fees are not recoverable in the absence of a provision therefor in the contract. Clow Corp. v. J.D. Mullican, Inc., 356 So.2d 579, 584 (Miss. 1978).
The issue of whether Bryant's suit is one on an open account can be settled quickly: Bryant has brought suit on an unliquidated claim. Reference to the "statement of account" attached to Bryant's complaint reveals that, although the dates and the hours worked on those *503 dates are listed, there is no indication of any hourly rate. Furthermore, the testimony at trial is undisputed that there was never any agreement between Bryant and Stanton as to the price Bryant was to be paid per hour. Absent a price understanding between Stanton and Bryant, Bryant's claim is necessarily unliquidated. The upshot of our caselaw is that an unliquidated claim does not meet the itemization standards necessary to qualify as an open account, see Westinghouse Credit Corp. v. Moore & McCalib, 361 So.2d 990, 992 (Miss. 1978); Evans v. Central Service & Supply Co., 226 So.2d 616, 618 (Miss. 1969); Pioneer-Hyrotex Industries, Inc. v. Barfield, 247 Miss. 845, 848, 157 So.2d 489, 490-91 (1963), although no case heretofore has expressly so held.
Furthermore, in order to qualify as a suit on an open account, the debtor must have failed to pay within 30 days after receipt of a written demand made in compliance with Miss. Code Ann. § 11-53-81 (Supp. 1982). In this case, Stanton received a demand letter on January 4, 1982, and suit was filed by Bryant on January 19, 1982. Though Bryant argues that the demand letter of January 4, 1982, made reference to prior correspondence, there is no evidence that, at any time prior to this January 4th letter, Bryant made a claim against Stanton for a specific amount.
The policy underlying the statutory and caselaw provisions for attorneys fees and prejudgment interest aims at protecting a creditor who has a specific liquidated claim from suffering damage by a debtor's unreasonable delay in payment. Considerations of such policy are not triggered in this case, as it does not appear that Stanton was aware of how much Bryant claimed until approximately the time this suit was filed. Instead of being an open account, "[s]crutiny of the declaration indicates that it is a suit sounding in contract ..." Westinghouse, 361 So.2d at 992.
The analysis of whether Bryant's suit is one upon a payment bond is similar, for Bryant's unliquidated claim lacks the elements usually associated with a suit on a payment bond. In particular, the surety who provided the payment bond is not a party to this lawsuit. USF & G was dismissed from this lawsuit.[2] How a lawsuit can be characterized as one on a payment bond when no obligation undertaken by virtue of the bond is a predicate for the claim of liability and where the surety is not party to the lawsuit is not apparent, although the point has been earnestly pressed.
Furthermore, the way this lawsuit was handled does not comport with statutory guidelines. For instance, under both old Miss. Code Ann. § 31-5-13 and new Miss. Code Ann. § 31-5-53, a suit instituted on a payment or performance bond may not be commenced until notice of the final settlement or abandonment by the primary obligee has been published. Though the new statute has not yet been construed, under the old statute this publication requirement was jurisdictional. Travelers Indemnity Co. v. Munro Oil & Paint Co., 364 So.2d 667, 668 (Miss. 1978). We have been unable to find any mention of, or allusion to, such publication in this record or in the briefs of the parties.
While Bryant's suit would be substantially mischaracterized as either a suit on an open account or a suit on a payment bond, it does appear to be a straight forward claim in quantum meruit. Griffith v. Goodin, 202 Miss. 548, 551, 32 So.2d 743, 744 (1947). Nearly all the proof put on by both parties at trial was focused on the issue of the value of Bryant's work. This would appear the proper theory upon which to understand this lawsuit. See Wiltz v. Huff, 264 So.2d 808, 811 (Miss. 1972) (quantum meruit recovery for express or implied contracts).
*504 In short, Stanton's assignments of error here are well taken. Bryant's basis for claiming attorneys fees and prejudgment interest is premised upon his suit being accurately characterized as either one on a payment bond or one on an open account. We think it clear, however, that Bryant's suit is in actuality one in quantum meruit which would not trigger the statutory provisions it seeks to invoke. There being no contractual agreement for attorney fees or prejudgment interest and no semblance of the quality of proof necessary to support a punitive damages award, the awards of prejudgment interest and attorneys fees in this case were improper and must be vacated. Clow Corp. v. J.D. Mullican, Inc., 356 So.2d 579, 584 (Miss. 1978). Moreover, no award of prejudgment interest may rationally be made (or computed) where the principal amount has not been fixed prior to judgment.

B. The Rule 12(b)(6) Motion

Stanton contends that the trial court's refusal to dismiss Bryant's complaint for failure to state a claim, Rule 12(b)(6), Miss. R.Civ.P., constitutes an error which is not only reviewable on this appeal but of reversible proportions.
Seizing upon Bryant's attempts to bring its case within the open account or payment bond statutes, Stanton argues in effect that Bryant's whole case stands or falls with those theories of recovery. In view of what has been said above, this assignment of error is necessarily reduced to the suggestion that Bryant's complaint is insufficient as a matter of law to state a claim for quantum meruit. Even if the suggestion were arguably sound (which it is not), the assignment raises a question which, in the present procedural posture of the case, one would have thought moot.
Rule 12(b)(6) has supplanted the demurrer in our civil practice. It provides that a plaintiff's complaint may be dismissed for "failure to state a claim upon which relief can be granted".
The issue of whether the denial of a Rule 12(b)(6) motion can be the subject of an appeal once a final order has been entered poses a question of form and logic, not substance. The types of matters within the office of a Rule 12(b)(6) motion are necessarily proper bases  at subsequent stages of the action  for: (1) a motion for summary judgment; (2) a motion for a directed verdict, (3) a request for peremptory instruction, (4) a motion for j.n.o.v., and (5) sometimes a motion for a new trial. The substantive objections first raised in a Rule 12(b)(6) motion, therefore, merge into these subsequent motions and retain no separate procedural identity once the Rule 12(b)(6) motion has been denied. McDonald v. General Mills, Inc., 387 F. Supp. 24, 32 (E.D.Cal. 1974) (motion for a new trial is a proper vehicle for renewing the objections first voiced in a Rule 12(b)(6) motion).
At first glance, it would appear that Stanton's couching this assignment of error in terms of a Rule 12(b)(6) motion was merely a mistake of form  Stanton should have assigned whatever substantive ground was contained in its Rule 12(b)(6) motion in its motion for j.n.o.v., and then appealed the denial of that motion to this Court. In other words, the substance of Stanton's Rule 12(b)(6) assignment of error could ordinarily be re-couched in a new and acceptable form. But this is not the case.
Stanton is seriously claiming that the complaint originally was deficient and should have been dismissed below and should be dismissed here. Stanton makes this claim in spite of its concession that it owes Bryant something and of the further fact that Bryant's proof made out a perfectly viable claim in quantum meruit.[3]
And so it is with the Complaint  it has the body of a suit on open account, some appendages appear to be those of a suit on a contractor's bond  and once the trial begins Appellee attempts to fly it on the wings of a quantum meruit.

*505 [... .]
In the case at bar, Appellee's Complaint did not set up any one plea that is sufficient in law. Appellant's objection to the defects was timely made in the form of the motion described herein above and the defects were not cured by the verdict.
 Appellant's Brief at 31, 33.
Stanton fails to perceive that the denial of a Rule 12(b)(6) motion will almost never be a proper subject of an appeal. After final judgment has been entered, the only appeal lies from the overruling of defendant's motion for j.n.o.v. (asserting the same substantive ground as is contained in the Rule 12(b)(6) motion).[4] While it is conceptually possible that an interlocutory appeal may lie from the denial of a Rule 12(b)(6) motion, we expect that the cases will be rare indeed when the criteria for the granting of such an interlocutory appeal will be met.
More specifically, the refusal of the trial judge to grant a Rule 12(b)(6) motion made on grounds the complaint is just too sketchy, its allegations too vague, is never appealable. Faced with such a complaint, the defendant has several options (other than appeal). He may move for a more definite statement. Rule 12(e), Miss.R.Civ.P. Ordinarily, it will be more practicable for the defendant to utilize discovery to unveil the details of the plaintiff's claim. Rules 26-37, Miss.R.Civ.P. A defendant may insist on a more precise statement of the plaintiff's claim at a pre-trial conference, Rule 16, Miss.R.Civ.P., for ordinarily the allegations and denials of pleadings ought to be deemed merged into the pre-trial order. Finally, a defendant may lie in wait for the plaintiff to offer at trial evidence deemed beyond the scope of the pleadings and spring forward with an appropriate objection (which, ordinarily, will be overruled by the trial judge who thought the complaint sufficient in the first place, or at best will be met by plaintiff's motion to amend, Rule 15, Miss.R.Civ.P., which generally will be  and ought to be  granted).
More fundamentally, Stanton seems unwilling to acknowledge the limited role of pleadings under our new rules. Rule 8(a), Miss.R.Civ.P., requires only that in its complaint a plaintiff provide
(1) a short and plain statement of the claim showing that the pleader is entitled to relief, and,
(2) a demand for judgment for the relief to which he deems himself entitled. Relief in the alternative or of several different types may be demanded.
Rule 8(e), Miss.R.Civ.P., then provides
(1) Each averment of a pleading shall be simple, concise, and direct. No technical forms of pleading or motions are required.
When a complaint is tested via a motion under Rule 12(b)(6) for failure to state a claim upon which relief may be granted, the sufficiency of the complaint is in substantial part determined by reference to Rule 8(a) and (e).
The leading federal case,[5]Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), construing an identically worded provision of the Federal Rules of Civil Procedure, states that
a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.[6] *506 355 U.S. at 45-46, 78 S.Ct. at 102, 2 L.Ed.2d at 84.
All of this aside, we hold that, in the procedural context of this case, Stanton has no right of appeal from refusal of the trial judge to grant his Rule 12(b)(6) motion to dismiss Bryant's non-statutory claims. Any defect in the complaint insofar as it sought recovery on a quantum meruit theory has been cured procedurally by the subsequent proceedings in this case.[7]
Stanton's only appeal from the quantum meruit verdict lies on substantive grounds. Did Bryant at trial establish its quantum meruit claim? Suffice it to say that the proof is without contradiction that Stanton owes Bryant something, the only question being how much. In this context it may not rationally be questioned that Bryant has established the liability phase of a quantum meruit claim.[8] Since we have before us no assignment of error urging that Bryant's evidence was beyond the scope of his complaint, the matter is at an end. The assignment of error is denied.

C. Was the Verdict Excessive?

The jury in this case was charged with ascertaining the value of the services which Bryant performed for Stanton. The point was hotly contested at trial, as it is here. Stanton's argument on appeal is that Bryant offered to do the entire job originally by himself for $24,000 and, therefore, payment to Bryant should be calculated by multiplying $24,000 by the percent of the work Bryant actually performed. $24,000.00 X 30% = $7,200.00. The formula which Stanton offers here is, of course, one possible way of calculating the value of Bryant's services. It is not the only one, however, presented to the jury.
Bryant offered credible evidence of the fair value of its bulldozer per hour. Bryant proved what it had been paid per hour on other jobs and prices paid others for the use and services of arguably comparable equipment. The jury's calculation that Bryant's services were worth $16,405.30 is not unreasonable as there was testimony which would clearly support this verdict.
We take such issues from the jury only where, under our familiar test, the facts are so clear that reasonable minds could not differ. See, e.g., City of Jackson v. Locklar, 431 So.2d 475, 478-79 (Miss. 1983) (standard for removing issues from jury); Paymaster Oil Mill Co. v. Mitchell, 319 So.2d 652, 656-57 (Miss. 1975) (same); General Tire & Rubber Co. v. Darnell, 221 So.2d 104, 105-07 (Miss. 1969) (same).
 Stong v. Freeman Truck Line, Inc., 456 So.2d 698, 708 (Miss. 1984).
*507 This rule holds where a jury's assessment of damages comes under attack, as when its liability finding is assailed. See, e.g., Harkins v. Paschall, 348 So.2d 1019, 1024 (Miss. 1977); Anderson v. Jaeger, 317 So.2d 902, 907 (Miss. 1975). Citing a plethora of authority, Anderson states:
A jury award of unliquidated damages will not be disturbed by this Court on appeal unless it has been made to appear that the amount is either so grossly excessive or so grossly inadequate as to "shock the enlightened conscience" or evince bias, passion or prejudice on the part of the jury.
317 So.2d at 907.
Stanton's fervor to the contrary notwithstanding, we are not so shocked by the verdict here under attack.

D. Costs

Stanton contends that although Bryant was the prevailing party, he should be assessed costs because:
This case went to trial in June, 1982, and resulted in a mistrial on the Motion of the Appellant. The Appellant takes the position as a matter of law, that the major costs accrued prior to the mistrial should not have been assessed to the Appellant as the mistrial was occasioned by the misconduct of the Appellee, and witnesses called on its behalf and further, the Appellee joined in the third motion for a mistrial.
Appellants Brief at 41.
The misconduct Stanton is referring to is that one of Bryant's witnesses was seen speaking to one of the jurors.
Neither party cites any law regarding this cost issue. The leading cases as to costs are: Magee v. Holmes, 220 Miss. 49, 70 So.2d 60 (1954); United Press Associations v. McComb Broadcasting Corp., 201 Miss. 68, 28 So.2d 575 (1947); and Reinecke v. Gibbs, 196 Miss. 247, 16 So.2d 853 (1944). These cases hold that a plaintiff who obtained substantial recover is entitled to recover costs. Nothing in these cases indicate that this cost rule should be altered in the event of mistrials. Furthermore, according to the testimony regarding the misconduct, it appeared to be more the result of a small town where everyone knows everyone else rather than some pernicious jury tampering.

IV.
By reason of what we have said above, so much of the judgment below as awards Bryant $16,405.30 in damages and assesses a like sum against Stanton is affirmed. That judgment shall bear interest as provided by law from the date of original entry, October 12, 1982, and costs as allowed by law. Beyond that, the judgment below is reversed and rendered.
AFFIRMED IN PART, REVERSED IN PART.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and HAWKINS, DAN M. LEE, PRATHER, SULLIVAN and ANDERSON, JJ., concur.
NOTES
[1] Stanton disputes this testimony which was offered through Bryant. In view of the jury's verdict, however, we state the facts reasonably favorably to Bryant. See Paymaster Oil Mill Co. v. Mitchell, 319 So.2d 652, 656-657 (Miss. 1975).
[2] We were advised at oral argument that the reason for this action was that the suit, as a suit on a payment bond, had been prematurely brought. If this be so, that is all the more reason why this suit simply is not a suit on a bond within the meaning of the attorneys fees statute.
[3] Stanton does not object on this appeal to the trial judge giving a peremptory instruction in favor of Bryant on the liability phase of the quantum meruit claim.
[4] A limited exception to the above statement should be recognized for statutory claims the form of pleading which has not been abrogated by the Mississippi Rules of Civil Procedure.
[5] Because our rules of civil procedure have been patterned after the Federal Rules of Civil Procedure, we look to authoritative constructions of the comparable federal rule for guidance in our consideration of questions presented under our rules. Bourn v. Tomlinson Interests, Inc., 456 So.2d 747, 749 (Miss. 1984); Stringfellow v. Stringfellow, 451 So.2d 219, 221 (Miss. 1984); Brown v. Credit Center, Inc., 444 So.2d 358, 364 fn. 1 (Miss. 1983).
[6] Whether Rule 8 goes all the way and adopts the theory of "notice pleadings" need not be addressed. See Official Comment to Rule 8, Miss.R.Civ.P. The Rules do significantly change  and diminish  the office of pleadings in a lawsuit. Most fundamentally, the scheme of our new rules has postponed the stage at which the details of the party's case must be disclosed. What once had to be disclosed in pleadings now need not be disclosed until discovery or pre-trial conference. Indeed, as Conley puts it, the diminished office of pleadings as a vehicle of disclosure

is made possible by the liberal opportunity for discovery and the other pre-trial procedures established by the Rules to disclose more precisely the basis of both claim and defense and to define more narrowly the disputed facts and issues.
355 U.S. at 47-48, 78 S.Ct. at 103, 2 L.Ed.2d at 85.
The most important thing to remember about pleadings under the Mississippi Rules of Civil Procedure is that they simply are not very important anymore. Witt v. Mitchell, 437 So.2d 63, 67 (Miss. 1983) (Robertson, J., concurring).
[7] Parenthetically it should be noted that many of the complaints made by Stanton are answered by Rule 8(e)(2). Stanton emphasizes the inadequacies of the complaint as stating a claim on an open account or on a payment bond. As indicated above, Stanton is right. But Bryant has sufficiently stated a quantum meruit claim. Rule 8(e)(2), in relevant part, provides,

when two or more statements are made in the alternative and one of them if made independently would be sufficient, the pleading is not made insufficient by the insufficiency of one or more of the alternative statements.
Bryant's complaint in this case, when conformed with the proof, states a totally viable claim in quantum meruit. The fact that the complaint was defective as to the open account and payment bond theories becomes wholly irrelevant.
[8] Recall that Stanton makes no objection here to the trial judge's having granted Instruction P-1 which directed a verdict in Bryant's favor on liability.